UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PH QUALITY PRODUCE, LLC,

              Plaintiff,                        **<u>MEMORANDUM AND ORDER</u>**

            -against-                    22-CV-246 (OEM) (JRC)

ARYE & SHAMY INC., *et al.*,

              Defendants/Third-Party Plaintiffs.
------------------------------------------------------------------X
**ORELIA E. MERCHANT, District Judge:**

      Plaintiff PH Quality Produce, LLC ("Plaintiff" or "PH Quality") brings this action against Defendant/Third-party Plaintiff Arye & Shamy, Inc. ("A&S"), A&S' principal Arye Deutsch ("Deutsch"), Marjaba Import & Export Corp. ("Marjaba"), Nidia Polanco Juarez ("Nidia"), and Areli Juarez Rubi ("Juarez"), seeking payment for shipments of perishable avocadoes. Before the Court is Plaintiff's motion for partial summary judgment on its breach of contract claim against Defendants A&S and Deutsch (together, for the purposes of this motion, the "Defendants") for nonpayment of two loads of avocadoes ordered by Marjaba from Plaintiff and shipped from Texas by Plaintiff to New York in 2021. For the reasons explained below, Plaintiff's motion is **DENIED**.

**BACKGROUND[1]**

      Three key players are involved here. The first is Plaintiff PH Quality, a Texas-based produce wholesaler which sells, among other things, avocadoes, a perishable agricultural commodity. Plaintiff's 56.1 Statement of Material Facts ("Pl's 56.1"), ECF 41-1, ¶ 9, 13. The second is A&S, a produce buyer and seller incorporated in New York and doing business in Brooklyn. Pl's 56.1 ¶¶ 3, 4. A&S is operated by Deutsch, its founder and principal. *See* Deutsch Decl. ¶¶ 1-2. The third is Marjaba Import & Export Corp. ("Marjaba"), an avocado sourcer and

---

[1] The facts recited are undisputed unless otherwise noted.

1

supplier, which is located and incorporated in Florida and run by Nidia Polanco Juarez ("Nidia"). *Id.; See* Nov. 5, 2021, Affidavit of Nidia Polanco Juarez ("Nidia Aff."), ECF 32-1, ¶ 2.

### A. A&S and Marjaba Enter a Joint Venture to Sell Avocadoes for Profit

Both A&S and PH Quality agree that on or about September 24, 2020, and the summer of 2021, A&S and Marjaba were partners in a joint venture to purchase and sell avocadoes in interstate commerce. Pl's 56.1 ¶ 9; Defendants' Responsive 56.1 Statement to Plaintiff's 56.1 ("Defs' 56.1"), ECF 43-1, ¶ 9. The evidence of such a joint venture is proffered through, among other things, text messages sent between Deutsch and Nidia, as well as evidence showing that the two had joint access to a Chase business checking account and the fact that Nidia had joint access to A&S' Intuit QuickBooks ("QuickBooks") account. *See* Pl's 56.1 ¶¶ 10-11; A&S Compl. ¶ 41 (listing full shared access and activities); Deutsch Decl. ¶ 13; *see also* Amended Complaint ("A&S Compl.")[2], Ex. D ("WhatsApp Texts"), ECF 24-3; A&S Compl., Ex. K ("Excel Text Record"), ECF 24-6; A&S Compl., Ex. E ("Chase Documentation"), ECF 24-4 (showing Deutsch and Nidia as co-signors on a Chase Business Complete Checking account owned by Marjaba). Nidia also traveled to New York on at least one occasion to see A&S' Brooklyn warehouse. A&S Compl. ¶¶ 26-27. As shown in the WhatsApp Texts, both Nidia and Deutsch sought to make a "profit" from their avocado venture. S*ee* WhatsApp Texts at 3.

---

[2] The Court may consider the A&S Complaint for summary judgment purposes as Deutsch has submitted a declaration swearing to his personal knowledge of the facts contained in the complaint under penalty of perjury. *See* Declaration of Arye Deutsch In Support Of Third-Party Plaintiffs' Third-Party Complaint ("Deutsch Decl."), ECF 24-7, ¶ 4; *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e).").

**B.  The Avocado Venture**

The genesis of the avocado venture arose from a WhatsApp text conversation between Nidia and Deutsch in or around September 29, 2020, in which Nidia represented that she could source "avocadoes out of Mexico" and send them "directly from Mexico" to Defendants.  *See, e.g.*, WhatsApp Texts at 17, 6 (Nidia explaining "We prefer to send avocados directly to you so we can save in transportation"; A&S responding "Yes its better direct"), 12 (Nidia explaining "There's only 1 region that can export [avocadoes] to USA: Michoacan . . . .").  The economic basics of the venture entailed a 25%/75% profit split between Nidia and A&S.  A&S Compl. ¶¶ 21-22; WhatsApp Texts at 3-4.

The evidence shows that initially the venture operated without much issue.  Nidia would ostensibly source avocadoes from Mexico and have them ultimately shipped to A&S in Brooklyn.  *See* A&S Compl. ¶ 14-15, 18, 21, 32.  Text message documentation shows that the avocadoes would at times purportedly await shipment to Brooklyn in McAllen, Texas or a cold logistics warehouse in Pharr, Texas, which also happens to be where PH Quality is located.  *See* Excel Text Record at 2-3, 6-7.  Deutsch would remit front or advance money to Nidia/Marjaba, purportedly to pay the Mexican farmers.  *See* A&S Compl. ¶ 24; *see e.g.* Excel Text Record at 2 (message from Nidia to Deutsch querying if Deutsch had "any feedback about the sales and/or the advance that we need to move forward with our farms"),  5 ("Arye, I just hung up with Mexico. They are behind some payments there. They need me to send them $15,000.00 try to see how much do you have available for us. . . ."); *see generally* A&S Compl., Ex. A (Chase Transfer Log), ECF 24-2.  The understanding between A&S and Nidia was that once A&S had sold avocadoes to buyers in New York, A&S would retain a 25% "commission" of the net revenues while Marjaba would receive the remaining 75% of the profit.  *See, e.g.*, A&S Compl. ¶¶ 21-23, 23 n.3, 58; WhatsApp Texts at

3; Excel Text Record at 4 (Nidia telling Deutsch: "I want to show you the prices report right now. So you can have tools to negotiate with your clients"), 6 (Nidia inquiring if "there [were] any payments from the clients" that day).

Between September 30, 2020 and February 5, 2021, Marjaba shipped to A&S sixteen loads of avocadoes with an aggregate value of $553,533.97. *See* Nidia Aff. ¶¶ 6-7; Am. Compl. ¶ 7. According to Nidia's affidavit, at least eight of the sixteen shipments of avocadoes were sent to A&S and paid for by A&S to Marjaba. Nidia Aff. ¶¶ 6-7. However, Nidia claimed that A&S owed Marjaba an unpaid balance of $197,088.86 for the sixteen shipments. *Id.* ¶ 7.[3] Defendants dispute this. A&S's position is that it "was never a buyer" from Marjaba but rather Deutsch and Nidia "worked together under an arrangement to sell avocados from Nidia's family farm." Defs' 56.1 ¶ 16.

According to Deutsch, he realized in or around January 2021 that the advance money he was sending to Nidia/Marjaba to source the avocadoes from Mexico was not actually going directly to farmers in Mexico at all but was instead being used to buy avocadoes from PH Quality in Texas. A&S Compl. ¶¶ 32, 37, 49. It was also thereabouts "revealed that [PH Quality] had initiated a lawsuit against Nidia for several additional pallets of avocadoes that they had not been paid for." *Id.* ¶ 37. Indeed, at the commencement of this lawsuit, Nidia swore Marjaba had actually been buying the avocadoes at issue directly from Plaintiff in Texas and not from farmers in Mexico. Nidia Aff. ¶ 10 ("Marjaba fell behind in payments to several of its produce suppliers, including PH Quality.").

---

[3] On August 8, 2021, Marjaba submitted an informal complaint to the United States Department of Agriculture pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. ¶ 499a *et seq.*, seeking payment by A&S of an outstanding balance of $197,088.86 for the sixteen shipments of avocadoes sent to A&S and partially paid for by A&S between September 30, 2020, and February 5, 2021. Nidia Aff. ¶¶ 7, 12 (citing PACA Case File R-2021-0690).

Two shipments of avocadoes from late January 2021 are at the core of this motion. *See* Pl's 56.1 ¶ 16-17. The invoice for the first shipment ("Shipment 1") is dated January 26, 2021. *See* Plaintiff's Amended Complaint ("Am. Compl."), ECF 32, Ex C ("Shipment 1 Documentation"), ECF 32-3. The bill of lading and invoice for Shipment 1, PH-121, identifies 20 pallets of avocadoes as being sold by PH Quality to Marjaba. *Id.* at 1. The invoiced amount to Marjaba totals $40,320.00. *Id.* at 3. The destination is marked as A&S in "Long Island City, NY." *Id.* at 2. The pick-up and arrival date of Shipment 1 was January 27, 2021. *Id.* at 2, 3.

The invoice for the second shipment ("Shipment 2") is dated January 27, 2021. *See* Am. Compl., Ex D ("Shipment 2 Documentation"), ECF 32-4. The bill of lading and invoice for Shipment 2, PH-126, identifies 20 pallets of avocadoes as being sold by PH Quality to Marjaba. *Id.* at 1. The invoiced amount to Marjaba totals $39,694.00. *Id.* at 3. The destination is marked as "Long Island City[,] NY." *Id.* at 2. The pick-up and arrival date of Shipment 2 was January 28, 2021. *Id.* at 2, 3. Thus, the total for the two shipments was $80,014.00.

According to Deutsch, the avocadoes that arrived to A&S in Brooklyn were overripe and unsalable. *See* Nidia Aff. ¶ 8; A&S Compl. ¶ 37 ("None of the products that arrived in January appeared to be of marketable quality whatsoever to sell even at a loss."). A&S contends that "[n]one of the customers A&S approached would buy any of the produce, and the market sent most of the products back." *See* A&S Compl. ¶ 40. As of January 2021, Nidia and A&S shared an Intuit QuickBooks account for their partnership. *Id.* ¶ 41(b). In February 2021, "Nidia herself created purchase orders on behalf of A&S, as if A&S was ordering produce from Marjaba." *Id.* ¶ 41(e); *see also* Ex. G to A&S Compl. ("Purchase Orders"), ECF 24-5 (showing that Nidia, not A&S, created purchase orders, including those numbered 2071, 2074, and 2075, on February 23 and 24, 2021). Soon thereafter, Nidia agreed to send a "good" load of avocadoes and requested

A&S send $27,000, which A&S transferred to Nidia.  A&S Compl. ¶ 44; *see also* Chase Transfer Log at 16 (purportedly showing the $27,000 wire transfer to Nidia). A&S contends that by the summer of 2021, A&S could no longer reach Nidia, who stopped any further avocado deliveries. A&S Compl. ¶ 47-48.

Marjaba failed to pay PH Quality the amounts owed for Shipment 1 and Shipment 2.  Pl. Am. Compl. ¶ 22.  On May 12, 2021, PH Quality submitted an informal complaint to the U.S. Department of Agriculture ("USDA") pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. ¶ 499a *et seq.* ("PH Quality's Informal Complaint"), seeking the outstanding payments from Marjaba.  Nidia Aff. ¶¶ 10-11 (citing PACA Case File R-2021-0529); Pl. Am. Compl. ¶ 23.  Despite good faith efforts, the matter could not be resolved, and PH Quality was granted permission by the USDA to file a formal PACA complaint against Marjaba on July 9, 2021.  Am. Compl. ¶ 23.

On October 7, 2021, Marjaba executed an Assignment and Release Agreement "whereby it irrevocably sold, assigned, granted, conveyed, and transferred to PH Quality all its right, title, and interest in" three invoices numbered 2071, 2074, and 2075 with a total unpaid balance of $88,984.22 owed by A&S to Marjaba (the "Assigned Invoices").[4] *Id.* ¶¶ 13-14; Pl. Am. Compl. ¶¶ 15, 25; *see* Pl. Am. Compl., Ex. B ("Assignment Agreement"), ECF 32-2.  The Assignment Agreement purports to release Marjaba from paying for the Satisfied Invoices. *See* Assignment Agreement.  In exchange, PH Quality released Marjaba from its obligations to pay the amounts owed under the two invoices for Shipment 1 and Shipment 2 (the "Satisfied Invoices"). *See*

---

[4] On November 1, 2021, Marjaba sent letters to A&S and the USDA Agricultural Marketing Service, PACA Division, notifying them that Marjaba had assigned its rights, title, and interest in the Assigned Invoices to PH Quality and that the remaining balances owed under the Assigned Invoices must be paid directly to PH Quality.  Nidia Aff. ¶¶ 14-15. Despite demands from PH Quality for payment, A&S has failed to pay the unpaid balance of the Assigned Invoices. Am. Compl. ¶ 17.  However, the Assigned Invoices are not at issue in this motion, which is limited to Plaintiff's breach of contract claim against A&S for Shipments 1 and 2.  *See* Pl's Mot. ¶¶ 1, 8-9.

Assignment Agreement at 1, 12-14.  As of the date the Amended Complaint was filed, PH Quality had not received payment for either Shipment 1 or Shipment 2.  *Id.* at ¶ 26.

### C.  Procedural History

PH Quality commenced this action against Defendants on January 14, 2022.  *See* Complaint, ECF 1.  On February 17, 2022, the Court granted a Temporary Restraining Order ("TRO") enjoining Defendants from "dissipating, paying, transferring, assigning, or selling any and all assets covered by or subject to the trust provisions of the PACA, except for payment to PH Quality . . ."  *See* Order dated Feb. 17, 2022, ECF 16.  After the Court granted Defendants' motion for extension of time to answer, *see* Order dated Mar. 14, 2022, Defendants filed their Answer on April 4, 2022.  *See* Answer to Complaint, ECF 19.  On April 15, 2022, Defendants moved to dissolve or modify the TRO.  *See* Defs' Cross-Motion to Dissolve TRO, ECF 22; Memorandum in Support of Defendants' Cross-Motion to Dissolve TRO, ECF 21.  On April 18, 2022, Defendants filed a Third Party Complaint against Nidia and Marjaba. *See* A&S Compl. On April 22, 2022, PH Quality filed its response to the Defendants' motion to dissolve the TRO.  *See* Response in Opposition to Cross-Motion to Dissolve TRO, ECF 26.

Following a Show Cause Hearing on May 9, 2022, the Court granted PH Quality's motion for leave to file an amended complaint.  *See* Minute Entry for proceedings held on May 9, 2022; Order dated May 9, 2022.  On May 10, 2022, PH Quality moved for a preliminary injunction and the Court granted the motion.  *See* Pl's Motion for Preliminary Injunction, ECF 29; Order Granting Preliminary Injunction dated May 10, 2022, ECF 30.  PH Quality filed its Amended Complaint against Defendants A&S, Deutsch, Marjaba, Nidia, and Juarez.  *See* Am. Compl.  After the Court granted Defendants' motion for extension of time to file an answer to the Amended

Complaint, *see* Order dated June 13, 2022, Defendants filed their answer to the Amended Complaint on June 30, 2022. *See* Defs' Answer to Am. Compl., ECF 36.

Following an Initial Conference Hearing before Magistrate Judge James R. Cho on July 7, 2022, the case was referred to Court-annexed mediation. *See* Minute Entry of Initial Conference Hearing on July 7, 2022. On October 27, 2022, the parties submitted a Mediation Report, stating that the "parties were unable to resolve the matter at mediation." *See* Report of Mediation Unsettled, ECF 38.

On August 10, 2023, the Court dismissed, without prejudice, the Third-Party Defendants Nidia, Juarez, and Marjaba under Rule 4(m) of the Federal Rules of Civil Procedure. *See* Order Dismissing Parties dated Aug. 10, 2023. On August 14, 2023, the Court denied Defendants' cross-motion to dissolve the TRO because the Court's granting of the preliminary injunction rendered the motion to dissolve moot. *See* Order dated Aug. 14, 2023.

On December 18, 2023, PH Quality moved for partial summary judgment. *See* Pl's Motion for Partial Summary Judgment ("Pl's Mot."), ECF 48. On the same day, Defendants filed their opposition, *see* Defs' Memorandum in Opposition to Motion for Partial Summary Judgment ("Defs' Opp."), ECF 50, and PH Quality filed their reply, *see* Pl's Reply in Support of Motion for Partial Summary Judgment ("Pl's Reply"), ECF 49. The motion is now ripe for adjudication.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986).  The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court resolves all ambiguities and draws all reasonable factual inferences "in favor of the party against whom summary judgment is sought." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017).

## DISCUSSION

### A.  Applicable Law

"Before reaching the merits of the parties' arguments, the Court must first decide what law should be applied to the Plaintiff's common law claims against [Defendants] for breach of contract . . . ." *Long Beach Rd. Holdings, LLC v. Foremost Ins. Co.*, 75 F. Supp. 3d 575, 586 (E.D.N.Y. 2015).  And while PH Quality maintains, and A&S does not dispute, that Texas law covers the breach of contract claim, A&S invokes a New York statute in its defense of liability. *See* Pl. Am. Compl. ¶¶ 42-50; Pl's Mot. ¶¶ 6-7; *see also* Defs' Opp. ¶¶ 5, 8 (citing to N.Y. Debt. & Cred. Law § 273(a)(1)) (McKinney 2020)).[5]  Further, as the Court finds that resolution of the contract law claims also turns on legal principles of joint ventures (also frequently called partnerships) and the liability of partners acting in furtherance of those joint ventures, the Court must also determine whether New York or Texas law applies when construing those principles.

"Where, as here, the court exercises supplemental jurisdiction over a party's state law claims, the Court applies New York choice of law rules." *Long Beach Rd.*, 75 F. Supp. 3d at 586 (citations omitted).  "Under New York choice-of-law rules, the first step of the analysis is to

---

[5] Defendants erroneously cited to a former version of N.Y. DEBT. & CRED. LAW § 276.  *See* Defs' Opp. ¶¶ 5, 8.  The statute was since amended in 2020; the relevant provision on fraudulent conveyances in the amended statute is § 273(a)(1).  *See* N.Y. DEBT. & CRED. LAW § 273 Supplementary Practice Commentary to 2020 Amendment (McKinney 2020) ("Section §273(a)(1) . . . is substantially similar to New York's prior avoidance provision dealing with "actual intent to hinder, delay or defraud" (former DCL § 276 . . .) and does not change New York law.").

determine whether there is a substantive conflict between the laws of the relevant choices." *Id.*

(citation and quotation marks omitted). "Laws are in conflict where the applicable law from each

jurisdiction provides different substantive rules." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins.

Co.*, 363 F.3d 137, 143 (2d Cir. 2004) (cleaned up). "In the absence of substantive difference,

however, a New York court will dispense with choice of law analysis; and if New York law is

among the relevant choices, New York courts are free to apply it." *Id.*

### 1.   Law Applicable to Breach of Contract

Plaintiff maintains that Texas law governs the breach of contract claim. See Am. Compl.

¶¶ 42-50; Pl's Mot. ¶¶ 6-7. Under Texas law, "[t]he essential elements of a breach of contract

claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the

plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as

a result of the breach." *Hanks v. Voya Ret. Ins. & Annuity Co.*, 492 F. Supp. 3d 232, 240-41

(S.D.N.Y. 2020) (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)).

Similarly, under New York law, to make out a viable claim for breach of contract, a Plaintiff must

allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff,

(3) breach of contract by the defendant, and (4) damages." *Eternity Global Master Fund Ltd. v.

Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir. 2004). The Court concludes that

given the similarity of the elements required to prove a breach of contract, there is no substantive

conflict between Texas and New York law and that Texas law applies to the contract claim at

issue. This is also confirmed by the fact that the place of performance – *i.e.,* the shipment of

avocadoes – occurred in Texas. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 151-52 (2d

Cir. 2008) (explaining that "[a]long with the traditionally determinative choice of law factor of the

place of contracting, the New York Court of Appeals has endorsed the following factors" as

10

relevant in a choice-of-law analysis: "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties") (internal quotations omitted).

### 2. Law Applicable to Joint Venture and Partnerships

Plaintiff contends that New York law governs the partnership and joint venture liability issues. *See* Pl's Mot. ¶¶ 3-5. "Under New York law, a joint venture is formed when (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses." *SSC Comm'ns, Inc. v. The Herrick Co., Inc.*, 360 F.3d 329, 341 (2d Cir. 2004). "Under New York law, the legal consequences of a joint venture are equivalent to those of a partnership." *Tehran-Berkeley Civ. & Env't Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 243 (2d Cir. 1989) (citing *Gramercy Equities Corp. v. Dumont*, 72 N.Y.2d 560, 565 (1988)). "[A]ll partners are liable . . . [j]ointly and severally for everything chargeable to the partnership . . . ." N.Y. P'ship Law § 26. "Where, by any wrongful act or omission of any partner in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership . . . the partnership is liable therefor to the same extent as the partner so acting or omitting to act." N.Y. P'ship Law § 24.

Likewise, Texas law requires similar elements to form a joint venture: "(1) a community of interest in the venture, (2) an agreement to share profits, (3) an agreement to share losses, and (4) a mutual right of control or management of the enterprise." *Yanez v. WWGAF, Inc.*, No. 5:19-CV-1065 (DAE), 2021 WL 5194731, at *5 (W.D. Tex. 2021) (citing *Coastal Plains Dev. Corp. v.*

*Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978)).  Under Texas law, joint ventures are legal entities described as being "in the nature of a partnership engaged in the joint prosecution of a particular transaction for mutual profit." *Brown v. Cole,* 291 S.W.2d 704, 709 (Tex. 1956).  A joint venturer is "subject to the same rules that apply to partners." *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988).  A joint venturer agrees "to become liable for the debts incurred in the scope of the joint venture as a matter of law." *Austin v. Truly*, 721 S.W.2d 913, 920 (Tex. App.–Beaumont 1986), *aff'd sub nom. Truly v. Austin*, 744 S.W.2d 934 (Tex. 1988); *see also* Tex. Bus. Orgs. Code Ann. § 152.302(a) ("Unless a partner does not have authority to act for the partnership in a particular matter and the person with whom the partner is dealing knows that the partner lacks authority, an act of a partner . . . binds the partnership if the act is apparently for carrying on in the ordinary course: (1) the partnership business; or (2) business of the kind carried on by the partnership.").

The Court concludes that given the similarity of the joint venture and partnership laws in the two states, there is no substantive conflict between Texas and New York law and that New York law applies to the joint venture liability issues here.  *See Int'l Bus. Machines Corp.*, 363 F.3d at 143 ("In the absence of substantive difference . . . a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").  This is further supported by the fact that "under New York's choice of law rules, the liability of partners of an out-of-state partnership are judged according to the laws of the jurisdiction where the partnership was organized." *McEssy v. Gray*, No. 1:15-CV-1462, 2019 WL 6829053, at *8 (N.D.N.Y. 2019) (cleaned up).  Because neither A&S nor Marjaba resides in Texas and A&S is organized in New York, New York law properly applies to the partnership liability claims here. Pl's 56.1 ¶¶ 3, 4; Nidia Aff. ¶ 2.

### 3. Law Applicable to Fraudulent Conveyance

In their defense of liability, Defendants invoke a New York Debtor and Creditor statute, arguing that Nidia's creation of the three Assigned Invoices using the QuickBooks account was a fraudulent conveyance. *See* Defs' Opp. ¶¶ 5, 8. The Court considers whether Texas or New York law should apply to a fraudulent conveyance issue. Under New York law, a "transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation [] with actual intent to hinder, delay or defraud any creditor of the debtor . . . ." *See* N.Y. Debt. & Cred. Law § 273(a)(1). Texas statutory law uses identical language. *See* Tex. Bus. & Com. Code Ann. § 24.005(a)(1). Thus, the Court concludes that there is no substantive conflict between Texas and New York law and that New York law applies to the fraudulent conveyance issue here. *See Int'l Bus. Machines Corp.*, 363 F.3d at 143.

## B. Joint Venture (New York Law)

Both parties agree that a joint venture existed between Marjaba and A&S to sell avocadoes for profit. *See* Pl's 56.1 ¶¶ 9, 11; Defs' 56.1 ¶¶ 9, 11. However, [w]hen there is no written partnership agreement between the parties, the court must determine whether a partnership, in fact, existed from the conduct, intention, and relationship between the parties." *DeCristofaro v. Nest Seekers E. End, LLC*, 54 Misc. 3d 1209(A), 52 N.Y.S.3d 246 (N.Y. Sup. 2017) (citing *Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (Second Dept. 1988))

"Under New York law, a joint venture is formed when (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses." *SSC Comm'ns, Inc.*, 360 F.3d at 341. In other words, "[t]he indicia of the existence

of a joint venture are: acts manifesting the intent of the parties to be associated as joint venturers, mutual contribution to the joint undertaking through a combination of property, financial resources, effort, skill or knowledge, a measure of joint proprietorship and control over the enterprise, and a provision for the sharing of profits and losses." *Napoli v. 243 Glen Cove Ave. Grimaldi, Inc.*, 397 F. Supp. 3d 249, 268 (E.D.N.Y. 2019) (quoting *Brown v. Cara,* 420 F.3d 148, 159-60 (2d Cir. 2005)).  "The absence of any one element is fatal to the establishment of a joint venture." *Id.* (citation and internal quotations omitted).  "Intent need not be express but may be implied from the totality of the conduct alleged..." *Id.* at 269 (quoting *Richbell Info. Servs.*, *Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575, 584 (First Dept. 2003)).

Here, the text messages sent between Deutsch and Nidia demonstrate that A&S and Marjaba entered into an agreement with the intent to be associated as joint venturers.  *See* WhatsApp Texts at 3-4; Excel Text Record.  Both parties made financial contributions to the joint undertaking.  On multiple occasions, Deutsch remitted advance money to Nidia, purportedly to pay the Mexican farmers.  *See* A&S Compl. ¶¶ 24, 44; *see e.g.* Excel Text Record at 2, 5, 8. Marjaba purchased the avocadoes, purportedly from Mexican farmers, but actually from PH Quality.  *See* Nidia Aff. ¶ 10; Shipment 1 Documentation; Shipment 2 Documentation.  Each party exerted control over the venture, as evidenced by their joint access to a Chase business checking account and the QuickBooks account.  A&S Compl. ¶ 41 (listing full shared access and activities); Chase Documentation.  As shown in the WhatsApp Texts, both Nidia and Deutsch sought to make a shared "profit" from their avocado venture and arranged to split the profit 25%/75%.  S*ee* WhatsApp Texts at 3-4; A&S Compl. ¶¶ 21-23, 23 n.3, 58.  Both parties also stood to share losses from the venture.  *See* WhatsApp Texts at 12-13; *see also* A&S Compl. ¶¶ 44-46 ("A&S had lost more money than Nidia or the farmers at this point.").  Therefore, considering these facts and the

totality of the parties' conduct, the Court concludes as a matter of law that Marjaba and A&S were engaged in a joint venture. The remaining question at issue concerns the *scope* of their joint venture. *See* Part D, *infra*.

**D. Breach of Contract and Statute of Frauds (Texas Law)**

Plaintiff argues that it is entitled to summary judgment on its breach of contract claim against A&S for the two Satisfied Invoices. *See* Pl's Mot. ¶1. "Under Texas law, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Hanks*, 492 F. Supp. 3d at 240-41 (quoting *Mullins*, 564 F.3d at 418); *see also Doss v. Homecomings Financial Network, Inc.*, 210 S.W.3d 706, 713 (Tex. App.–Corpus Christi-Edinburg 2006).

First, the Court concludes that a valid contract for Shipments 1 and 2 existed between Marjaba and PH Quality. Whether a contract is valid and enforceable is a question of law. *See Yazdani-Beioky v. Sharifan*, 550 S.W.3d 808, 823. (Tex. App. 2018); *Vermont Info. Processing, Inc. v. Montana Beverage Corp.*, 227 S.W.3d 846, 852 (Tex. App. 2007). "A valid, enforceable contract exists when the following elements are shown: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding." *E-learning LLC v. AT&T Corp.*, 517 S.W.3d 849, 858 (Tex. App. 2017); *accord Vermont Info. Processing, Inc.*, 227 S.W.3d at 852. It is undisputed that Marjaba ordered two loads of avocadoes from PH Quality, thereby offering to purchase the avocadoes. *See* Pl's 56.1 ¶ 14; Shipment 1 Documentation; Shipment 2 Documentation. PH Quality accepted Marjaba's offer by shipping the two loads of avocadoes to

A&S.  *See* Pl's 56.1 ¶ 15; Defs' 56.1 ¶ 15.  PH Quality's shipment and A&S' receipt of the two loads demonstrate that the agreement was executed and delivered with mutual assent, consent, and the intent that the contract be mutual and binding.  *See id.;* Pl's Mot. ¶ 8.  Therefore, the first required element in the breach of contract claim—the existence of a valid contract—is satisfied as to a contract between Marjaba and PH Quality.

Defendants raise a Statute of Frauds defense, arguing that there is no requisite written instrument signed by the Defendants or Marjaba to substantiate the existence of a valid contract. *See* Defs' Opp. ¶ 6.  Under Texas law, which incorporates the Uniform Commercial Code's Statute of Frauds, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker."  Tex. Bus. & Com. Code Ann. § 2.201.  Defendants argue that the pertinent contract falls within the Statute of Frauds because it is for the sale of goods—two loads of avocadoes—for the cumulative price of $80,014.00, over the $500 threshold.  *See* Defs' Opp. ¶ 6; Shipment 1 Document; Shipment 2 Document.  Thus, defendants contend the contract is unenforceable because neither A&S nor Marjaba signed a written contract with PH Quality.  *See* Defs' Opp. ¶ 6.

However, "[w]here a contract is executed on one side and nothing remains but the payment of the consideration, this may be recovered notwithstanding the Statute of Frauds."  *Hawkins v. Myers*, No. 02-14-00123-CV, 2015 WL 1646812, at *5 (Tex. App. 2015) (quoting *Machann v. Machann*, 269 S.W.2d 826, 828 (Tex. Civ. App. 1954)).  Further, under Texas law, even partial performance of an agreement may remove a contract from the requirements of the Statute of Frauds.  *See Vermont Info. Processing, Inc.*, 227 S.W.3d at 853;  *Thomas v. Miller*, 500 S.W.3d 601, 609 (Tex. App. 2016); *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147,

160 (Tex. App. 2017) ("[T]he partial-performance exception to the statute of frauds does not require full or even substantial performance by a party."). To establish an exception to the Statute of Frauds, "partial performance must be 'unequivocally referable to the agreement and corroborative of the fact that a contract actually was made.'" *Vermont Info. Processing, Inc.*, 227 S.W.3d at 853 (quoting *Bookout v. Bookout*, 165 S.W.3d 904, 907-08 (Tex. App. 2005) ("To establish the partial performance exception, the actions relied upon 'must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced . . . .'")). "The question of whether an exception to the statute of frauds applies is generally a question of fact." *Rossmann v. Bishop Colorado Retail Plaza, L.P.*, 455 S.W.3d 797, 808 (Tex. App. 2015).

"In order to establish the partial performance exception, the [party acting in reliance on the contract must] show that (1) *they* had performed acts unequivocally referable to the agreement (2) that the acts were performed in reliance on the agreement (3) that as a result of the acts they had experienced substantial detriment (4) that they have no adequate remedy for their loss and (5) that [the other party to the contract] would reap an unearned benefit such that not enforcing the agreement would amount to a virtual fraud." *Thomas*, 500 S.W.3d at 609 (holding that the partial performance exception to the statute of frauds was met when a buyer made mortgage payments on a seller's behalf in reliance on an oral agreement whereby real property would be conveyed to the buyer after he paid the seller's mortgage balance). Here, it is undisputed that PH Quality shipped the two loads of avocadoes to A&S in New York, as it was obligated to do under the Satisfied Invoices and received no payment for either load. *See* Pl's 56.1 ¶¶ 15-19; Defs' 56.1 ¶ 15-19. By delivering the two loads, PH Quality (1) performed acts unequivocally referable to its agreement with Marjaba (2) in reliance on the agreement, (3) experienced substantial detriment as a result,

(4) had no adequate remedy for its loss, and (5) Marjaba reaped an unearned benefit such that the agreement would amount to a virtual fraud.  Based on the undisputed facts, PH Quality at least partially, if not fully, performed its obligations under the Satisfied Invoices, and no reasonable jury could conclude otherwise.  Thus, the Court holds as a matter of law that PH Quality's full or partial performance precludes the Defendants' Statute of Frauds defense.

The Court now turns to the remaining three elements of a breach of contract claim.  As stated before, it is undisputed that the two loads were shipped to A&S and that Marjaba failed to pay the invoices for the two loads of avocadoes.  *See* Pl's 56.1 ¶¶ 15-19; Nidia Aff. ¶ 10.  Therefore, all required elements of a breach of contract claim between PH Quality and Marjaba were met: (1) Marjaba and PH Quality entered into a valid contract; (2) PH Quality tendered performance by shipping the two loads; (3) Marjaba breached the contract by failing to pay for the order; and (4) PH Quality sustained damages as a result of the breach.

Though the Court concludes that as a matter of law Marjaba breached its contractual obligations with PH Quality, the question at issue in this motion is whether *Defendants sued here* – i.e., A&S and Deutsch – are liable for that breach.  For that analysis, the Court must next consider whether Marjaba's conduct in forming the contract was within the scope of its joint venture with A&S.  *See* Part D, *infra*.

### E.  Defendants' Liability For Shipment 1 and Shipment 2 (New York Law)

"Under New York law, the legal consequences of a joint venture are equivalent to those of a partnership."  *Tehran-Berkeley Civ. & Env't Eng'rs*, 888 F.2d at 243.  "[A]ll partners are liable . . . [j]ointly and severally for everything chargeable to the partnership. . . ."  N.Y. P'ship Law § 26.  "Where, by any wrongful act or omission of any partner *in the ordinary course of the business of the partnership*, or with the authority of his copartners, loss or injury is caused to any person,

not being a partner in the partnership . . . the partnership is liable therefor to the same extent as the partner so acting or omitting to act."  N.Y. P'ship Law § 24 (emphasis added).

Here, Nidia ordered Shipments 1 and 2 from PH Quality to be delivered to Defendants. *See* Shipment 1 Documentation; Shipment 2 Documentation.  It is undisputed that both loads were shipped in interstate commerce.  Pl's 56.1 ¶ 15; Defs' 56.1 ¶ 15.  PH Quality appears to contend that because Nidia was acting with apparent authority as part of her joint venture with A&S when she ordered Shipments 1 and 2, Defendants are jointly and severally liable for the amount owed for the two shipments.  *See* Pl's Mot. ¶¶ 3-5.  However, "the pivotal test for liability" of a wrongdoer's partner is "whether the wrong was committed on behalf of and within the reasonable scope of the partnership business."  *Dupree v. Voorhees,* 891 N.Y.S.2d 124, 126 (N.Y. App. Div. 2009).  Thus, the relevant question for the Court is whether Nidia acted within the scope of Marjaba's joint venture with A&S when she ordered Shipments 1 and 2.

This question raises a genuine dispute of material fact for a jury.  Defendants claim their intent in forming a joint venture with Marjaba was to enter into a business venture with an entity that sourced avocadoes "[d]irectly from Mexico."  WhatsApp Texts at 6; *see also* Defs' Opp. ¶ 14 ("A&S was always under the impression that the avocados were being delivered from Nidia Polanco's family farm in Mexico.").  Indeed, the texts between Nidia and Deutsch demonstrate that Nidia represented Marjaba as sourcing its avocadoes "out of Mexico" and shipping them "[d]irectly from Mexico" to A&S.  WhatsApp Texts at 6, 17; *see also* Excel Text Record at 21 (Nidia telling Deutsch "[w]e can send [avocadoes] from our farms this week").  Based on this evidence, a jury at trial could reasonably credit Defendants' understanding that the scope of the joint venture was limited to shipments of avocadoes directly from Mexico, not through a wholesaler from Texas.

However, the text message evidence indicates that Marjaba and A&S both understood the avocadoes would at times await shipment in Texas, where PH Quality is located. *See* Excel Text Record at 2-3, 6-7. Nowhere in the text message evidence does Nidia explicitly and specifically state that she sourced avocadoes from her *family* farm in Mexico. *See generally* WhatsApp Texts; Excel Text Record. Thus, a reasonable jury could conversely find that Nidia acted within the scope of her joint venture with A&S when she sourced avocadoes from PH Quality to be shipped to A&S in New York, potentially benefitting both Marjaba and A&S under the terms of their profit-sharing arrangement.

Therefore, a genuine dispute of material fact exists regarding whether Nidia acted within the scope of her joint venture with Defendants when she ordered the two unpaid shipments. *See Liquori v. Dolkart*, 166 N.Y.S.3d 352, 360 (N.Y. App. Div. 2022) (affirming the trial court's denial of summary judgment because "questions of fact exist as to" the potential liability of the wrongdoer's partner). It is up to a jury to consider and weigh the facts and determine whether Nidia's conduct in ordering Shipments 1 and 2 constituted a "wrongful act . . . in the ordinary course of the business of the partnership, or with the authority of [her] copartners." N.Y. P'ship Law § 24. Because a reasonable jury could find for Defendants, the nonmoving party here, that Nidia acted outside the scope of her joint venture with A&S, summary judgment must be denied.

**D. Fraudulent Conveyance Statutes**

Defendants invoke a New York Debtor and Creditor statute, arguing that the Court should rule in favor of A&S as a victim of fraud because Nidia's creation of the three Assigned Invoices between Marjaba and A&S was fraudulent. *See* Defs' Opp. ¶¶ 5, 8 (arguing that because the Assigned Invoices "were created for the express purpose of assigning them to Plaintiff and avoiding [Nidia's] debt . . . the Court should rule in favor of the defrauded party"). The evidence

shows that Nidia herself used A&S' QuickBooks account to create purchase orders corresponding to the three Assigned Invoices, numbered 2071, 2074, and 2075, between A&S and Marjaba.  *See id.* ¶ 5; Purchase Orders at 6, 8-9; Assignment Agreement at 1, 8-11.  But Plaintiff contends that the question of whether the Assigned Invoices were fraudulently created or conveyed is irrelevant to this motion.  *See* Pl's Reply ¶ 3.  The Court agrees.

The only invoices at issue in Plaintiff's motion for partial summary judgment are the two Satisfied Invoices, numbered 121 and 126, between Marjaba and PH Quality for Nidia's orders of Shipments 1 and 2 in January 2021.   *See* Pl's Mot. ¶¶ 1, 8-9.  Therefore, any potential fraud committed with respect to the Assigned Invoices is separate and apart from the determination of whether Defendants are liable for Marjaba's breach of the Satisfied Invoices and irrelevant to the resolution of the instant motion.

## CONCLUSION

For the reasons explained above, Plaintiff's motion for partial summary judgment is **DENIED.**

**SO ORDERED**.

/s/ Orelia E. Merchant
ORELIA E. MERCHANT
United States District Judge

Dated: August 5, 2024
         Brooklyn, New York